### CHILD v. CHILD.

Circuit Court, Dade County.
September 3, 1953.

Walton, Hubbard, Schroeder, Lantaff & Atkins, Miami, for petitioner-defendant.

Frank J. O'Connor, Miami, for plaintiff.

GEORGE E. HOLT, Circuit Judge.

The defendant father seeks complete custody of the minor children, a boy and girl aged 5 and 9 respectively, who are the product of the marriage, which union was dissolved by a divorce in 1950 between defendant and the plaintiff mother.

Testimony adduced before the court in a protracted hearing reveals the mother living here alone with the two children, seeking to augment her income by working at various jobs, not only leaving them alone in the day time, but practically every night of the week, returning home at all hours of the morning. This is substantiated by the testimony of her neighbors in the same apartment house, several of whom were forced during her absence to attend to the children in the night time, one of whom suffers from asthma. Some of the neighbors in nearby apartments went in at night and found the children alone, with the radio and television on full blast, after they had fallen asleep listening to various programs.

The friends of the plaintiff mother, most of whom were divorcées themselves, testified in a rather weak and strained fashion that they had a compact between themselves to look after each other's children, although all of them reside in separate and different buildings from the mother—that they checked in quite often to see that the children were all right. The testimony of the mother, who confirmed the fact that she was away practically every night of the week, leads to the comment that if such an agreement was actually in effect (which is extremely difficult to refute) it certainly was an unfair one because there was very little time, if any, for the mother here to reciprocate for her friends and their children. For that reason the testimony of these people who sought to come to the aid of the mother is not of much value, nor can the same be given any weight.

If these constituted all the facts in the case, taking into consideration the mother love, and the value usually assessed to it by the courts, even then the scales are found to be balanced adversely against her and her actions herein. Lack of proper clothing, cleanliness and other items reflect negligence in the care of her children, also tend to reflect against her contentions and protestations. But more than this, she is engaged to and has promised to marry a man with whom she has been consorting for several months, on one occasion permitting him to spend the night in her apartment. Innocent as this episode may have been it certainly did not add to her prestige in the neighborhood. Moreover, her fiancé's personal record constitutes a cloud from which she cannot fly. He has been arrested, convicted and served time in a penal institution. A charge in Dade County of possessing stolen goods is still pending against him. He has just recently divorced his second wife. He admitted punishing one of the children corporally (whether justified or not is beside the point), and being without funds practically all the time.

During one stage, from May 26 to June 26, 1953, the mother allowed the juvenile court of this county to place both children in the Kendall Home for one month. This in itself constitutes an admission of her inability to care for them properly.

This regrettable situation may not be the mother's fault entirely. It could probably be the result of the system and the situation in which she has found herself. Having mothered two children living in an atmosphere of congeniality with her husband's friends engaged in his same line of effort—airline pilots—the sudden and complete cessation of this type of life, and being compelled to begin and live a new type of existence alone, plus the sole responsibility of rearing the children with limited funds—all that the father could reasonably contribute and there should be no complaint on that score—these could probably be the main contributing factors to her dilemma. Certainly she did nothing affirmatively to harm her children, who she loves very much, but her negative approach left everything to be desired as to the welfare of her two children.

The father has remarried from which union there are no children. His present wife is employed but she will stop working if the children are awarded to him and care for them in an adequate home in Connecticut. He is now stationed in New York and is actively engaged in the position of his profession, as a Pan American Airways pilot. He offers a home and constant care and attention, and although he may have been derelict in the past in personally seeing his children, this can be excused for the most part by the demands of his position. He voluntarily without court order increased the support money of the mother.

The welfare of the children is, of course, the sole question to be determined under the facts. There can be but one answer. This court is extremely reluctant to separate the children from their mother—with all that the word and appellation connotes—especially children of tender years, but the situation since the divorce in 1950 instead of improving has worsened to the point where prompt and drastic action is necessary so that permanent psychological marks and scars will not mar the future life and happiness of the two minors involved in this action. I do not in any way condemn the mother who, I think, under the circumstances has done the best she could—but it is not enough.

It is therefore ordered, adjudged and decreed that the petition of the defendant father is granted and the complete custody of Kathryn Child and Robert Franklin Child, III, the children of the parties, is hereby lodged in the father, with rights of reasonable visitation vested in the plaintiff mother, and her petition for modification of the decree is denied.