73 So.2d 274 (1954)
BENNETT
v.
BENNETT.
Supreme Court of Florida. Special Division B.
June 15, 1954.
Rehearing Denied July 7, 1954.
*275 Ward & Ward and Robert C. Ward, Miami, for petitioner.
J. Lewis Hall, Tallahassee, for respondent.
DREW, Justice.
We here review, under Rule 34 of this Court, 30 F.S.A., an order of the Circuit Court of Dade County relating to the custody of the two minor children of the parties involved in this case. Hereafter in this opinion, we shall refer to the petitioner, R.C. Bennett, as the husband, and the respondent, D.B. Bennett, as the wife.
The order here reviewed, omitting the formal parts, is as follows:
"This cause having come on to be heard upon the petition of Daga B. Ramsey, formerly Daga B. Bennett for modification of final decree of divorce and modification of that certain order of modification of the final decree dated June 12, 1952, and the answer of the plaintiff R.C. Bennett to said petition for modification; and said cause having been heard before the Court, upon testimony, and the Court being of the opinion that conditions have changed with respect to the custody of the two minor children, James Bennett and Gunnar Bennett since the order of Court dated June 12, 1952; and the Court having heard the testimony of said minor children of the parties, the interrogation of said minor children being by the Court; the Court finds as follows:
"(1) That conditions have changed since the Order of Modification heretofore entered June 12, 1952.
"(2) That it would be to the best interest and welfare of the two minor children that the said custody provisions heretofore entered be changed.
"It is therefore upon consideration, ordered and decreed that the order of this Court dated June 12, 1952, be modified or changed as follows:
"(A) That the custody of said two minor children, James Bennett and Gunnar Bennett, be and the same is hereby awarded to the father, R.C. Bennett, and the mother, Daga B. Ramsey, equally and with equal responsibility, free from interference from the other.
"(B) That the said two minor children shall be placed in a boarding *276 school; either the same school or different schools, of the type, kind and character heretofore attended by said children; and both of the parents shall agree upon which school and where located that said children shall attend; and, in the event said parents cannot agree upon a school or schools said minor children should attend, then each of said parties is to submit to this Court the name of a school and where located and the Court shall decide the school or schools which said children shall attend.
"(C) The cost of schooling, clothing, education, medical bills, travelling expenses of said two minor children shall be borne and paid for by the father, R.C. Bennett, and this shall include reasonable telephone charges incurred by said children in telephoning their mother, who at the present time lives in the City of New York, State of New York; and that each of said parties shall have the right of visitation to said minor children during the school term, but said right of visitation shall be exercised within reason and so as not to interfere with the schooling or health of said children.
"(D) Each of the parents shall have custody of said children for one-half of the summer vacation, the mother, Daga B. Ramsey, having the first half of the summer vacation, and the father, R.C. Bennett, having the latter half of the summer vacation. During the vacation period the said custody of the parents shall not be interfered with, restricted or limited in any way by the other parent; in other words, the parent not having the children at said time shall not visit the said children. The two weeks Christmas vacation shall be equally divided between the parents, the mother having the first week and the father having the second week.
"(E) It has been made to appear to the Court that R.C. Bennett is now paying to his former wife, Daga B. Ramsey, the sum of $2500.00 for costs, expenses and upkeep of the two minor children for the six weeks period of the summer months, and also for necessary travelling expenses of the mother in visiting said children, and the Court being of the opinion that said sum should be increased to $3500.
"It is therefore ordered and decreed that R.C. Bennett pay to his former wife, Daga B. Ramsey, the sum of $3500. on June first of each year, and said Daga B. Ramsey shall not be required to give any accounting for the expenditure of said sum. That the mother, Daga B. Ramsey, is allowed the sum of $250.00 for her necessary expenses in attending the hearing of this cause in the month of November, 1953, which sum the plaintiff, R.C. Bennett, shall forthwith pay or cause to be paid to his former wife, Daga B. Ramsey."
In the summer and early fall of 1951, the husband concluded that the wife was having an affair with one Jack Ramsey, a young man some fifteen years her junior. The wife admitted the affair and professed her love for this person; and she evidenced her intention of marrying him in the event she could procure a divorce. In the event she were unable to do so, she said it was her intention to continue her relationships with him even though married.
On the following October 3, 1951, the husband instituted suit for divorce in the Circuit Court of Dade County. The bill alleged, with reference to the two children and financial arrangements:
"Plaintiff would further show to the Court that the defendant * * * has admitted that the plaintiff would be the proper one to have the care and custody of the children and has conceded that point."
The complaint contains the further allegation:
"All financial arrangements and settlements have been made between the parties * * * and that there is now *277 no question of alimony or property interest involved between these parties."
The answer filed by the wife the following day:
"admits that she and the plaintiff have agreed that the plaintiff shall have custody of said children and further admits that financial arrangements and settlements have been agreed upon by the parties hereto whereby there is now no questions of alimony or property interest involved between them."
On October 17, 1951, after testimony had been taken (none was offered by the wife), the lower Court entered a final decree granting a divorce to plaintiff. This decree contained the following provisions with reference to the two children:
"It appears that there were two minor children born of said wedlock, to wit, James Bennett, now age Twelve, and Gunnar Bennett, now age Ten, and the custody and control of said children is hereby awarded to the plaintiff."
"The defendant is hereby restrained * * * from interfering with the plaintiff in his care and control of said children unless by consent of the plaintiff or by special order of this court, but defendant shall have the right to visit the children at their place of residence at reasonable times."
The decree retained jurisdiction for the purpose of the enforcement thereof and for making further orders with reference to the care and custody of the children.
One week after this final decree was signed, the wife married the object of her affections, Jack Ramsey.
On January 10, 1952, a little less than three months after the entry of the final decree, the wife filed a petition for modification of the decree with reference to the custody of the children and the property settlement. This matter was finally heard before the lower Court on the limited issue of "events and happenings subsequent to the entry of the Final Decree of divorce in this cause." Testimony was taken before the Chancellor below and an order modifying the final decree of divorce with reference to the children was entered on June 12, 1952. This order, from which no appeal was ever taken, left the custody and control of the two children in the husband; but the order also provided that the wife should have the custody of the two children for a six weeks period commencing June 15, 1952, for an additional period commencing on or about December 24, 1952, and, unless ordered otherwise by the Court, for the same dates of each year thereafter until the children reached their majority. This decree further directed the husband to pay the wife the sum of $50 per week for the support and maintenance of the children for each week they were in the wife's custody. In addition thereto, the husband was required to pay all travelling expenses of the children from their place of abode with the husband to the wife's abode and return. This order further provided the wife should have the right to visit with the children at certain periods of time and under certain conditions therein particularily set forth, and the Court retained jurisdiction as in the previous decree.
One week after the entry of the foregoing decree of June 12, an agreement was entered into between the husband and wife (in an effort finally to settle their differences), whereby the husband agreed to pay the wife $2,500 per year so long as either of the children was under the age of twenty-one years, against which payment should be charged all sums which the husband was obligated to pay for the support and maintenance of said children or either of them but without the necessity of accounting for the use of said funds or any parts thereof. This agreement further contained the provision:
"The custody provisions contained [in the Decree of June 12, 1952] are acceptable to the parties and both agree that they will not apply for a modification thereof without the written consent of the other first having obtained."
*278 The first payment under this agreement of $2,500 was made to the wife upon the signing thereof.
On October 29, 1953, the wife filed her second petition for modification. This petition set forth events which occurred after the entry of the order of June 12, 1952 but these events relate primarily to altercations between the husband and wife and Jack Ramsey. It is alleged in said petition that on numerous occasions the husband, when visiting the wife and in the presence of the two children, used vile and vulgar language in referring to the said Jack Ramsey. The petition prayed that the Court modify the decree of June 12 by granting the full care, custody, possession and control of the two minor children to the wife with reasonable visitation priveleges to the husband and that the husband be required to support and maintain the two children in the same manner and to the same extent to which they had been theretofore accustomed or, in the alternative, that said decree be changed more equitably to meet the existing conditions. The husband denied the allegations of said petition and moved to dismiss the same on the ground that it failed to show any violation of the order of June 12 nor did it allege any material change in circumstances which would justify altering the provisions of said decree.
Testimony was taken on the issue so made, most of which related to the personal differences between the husband and wife and Jack Ramsey and the various altercations that took place on most every occasion where the three parties met. Upon the conclusion of the hearing, the lower Court entered the order which is the subject of this appeal and which we have set forth in the forepart of this opinion.
The primary concern of this Court is and should be the welfare of the children. If any change is to be made in the provisions of the decree of June 12, 1952, we are warranted in making such changes only on the basis of a change in conditions and circumstances of a substantial character which have occurred since the date of that decree or on the basis of facts bearing upon the question which were in existence at the time the decree was made but were unknown to the Court on the date of its decree. Sayward v. Sayward, Fla., 1950, 43 So.2d 865. And, even if we do determine that there has been a substantial change in conditions, we would be warranted in altering said decree only where it appears that the welfare of the children will be promoted thereby.
While the lower Court in general terms found "that conditions have changed since the order of modification heretofore entered on June 12, 1952", the record does not contain any substantial, competent evidence that there has been any material or substantial change in conditions which bear upon or relate to the question of advisable changes in the custody provisions relative to the children or indicate in any manner that their welfare would be promoted by a change in the provisions of that decree. We held in Sayward v. Sayward, 43 So.2d 865, 868, supra, that
"A decree fixing the custody of minor children, whether based on a stipulation between the parties or entered on evidence adduced by the parties at an adversary hearing on the issues of custody, constitutes a final decree of the court on conditions then existing."
Moreover, in the recent case of Jones v. Oakes, Fla. 1954, 71 So.2d 252, 254, it appeared that the parties had agreed on the question of custody of their children and such agreement had been incorporated in the decree of divorce entered in Missouri. Some years thereafter, the wife brought suit to modify the decree because of certain alleged changed conditions. The lower Court granted the relief but on appeal to this Court, we held:
"The decree of the Missouri Court is conclusive as to all matters properly before the court there that were finally determined in that decree. The only jurisdiction reserved in that decree was to `alter, amend or modify this decree in such form and manner as the Court may from time to time adjudge and determine to meet the needs and best welfare *279 of said children.' Nowhere in the record do we find any allegation or evidence that `the needs and best welfare' of the child Daphne require a modification of this portion of the decree. Moreover, both parties concede that such decree may not be modified retroactively. Pottinger v. Pottinger, 133 Fla. 442, 182 So. 762; Blanton v. Blanton, 154 Fla. 750, 18 So.2d 902."
We concluded in that case that no facts had been established that would justify any change in the Missouri decree and reversed the lower Court on that point.
That the husband has complied with the provisions of the order of June 12 is established by the sworn testimony of the wife in which she admitted that "Mr. Bennett has followed the whole agreement to the letter very carefully but not the spirit, which he has broken constantly, and that is why I am here". This is not a sufficient reason to disturb the provisions of a decree determining the question of custody of the children for the reasons which we have heretofore stated.
We now direct our attention to that portion of the decree here being reviewed directing that the children be placed in a boarding school. Under the circumstances revealed by the record before us, and in view of the provisions of both the final decree and the modification thereof of June 12, 1952, awarding the care, custody and control of these children to their father, we can find no basis on which we can approve this provision of the instant decree. The husband has the right to send the children to either public schools or private schools and we are of the view that, in the absence of most unusual conditions, it is not within the power of the courts to tell the parents what schools their children shall attend.
There is no basis whatever in the pleadings or in the evidence for the award of $3,500 to the wife "for cost, expenses and upkeep of the two minor children for the six week period of the summer months and also for necessary travelling expenses of the mother in visiting said children". Nor is there any basis in the record for the award of $250 expenses to the wife in attending the hearing on her petition for modification.
We are not unmindful of the fact that the two children of the parties to this cause have expressed their desire to live with their mother. We have carefully considered the lengthy examination of these children by the Chancellor below but, at their ages and under the circumstances existing, we feel that not only is the showing here legally inadequate to authorize a change in the decree of June 12, 1952 but the best interest of the children will be promoted by continuing their custody in the manner provided for in that decree.
The certiorari is granted and the challenged order is hereby quashed with directions to dismiss the petition for modification.
ROBERTS, C.J., and THOMAS and BUFORD, JJ., concur.