## ROBERTS v. KNIGHT.
### No. 18517.
Circuit Court, Lake County.

June 27, 1968.

Wallace L. Storey, Bartow, for plaintiff.

Salvatore R. Scarito, Orlando, for defendant.

W. TROY HALL, Jr., Circuit Judge.

This cause came on for hearing on the 31st day of May, 1968, upon a petition filed by plaintiff William E. Roberts, for change of custody of William E. Roberts, Jr., age 7 years; and upon defendant Linda Knight's cross-petition for increase in child support and for curtailing existing visitation rights of the child's father, William E. Roberts.

The history of this case, which began with a decree of divorce on June 29, 1962, is amply set out in prior orders of this court,

particularly in a supplemental final decree dated July 28, 1964. It is sufficient to comment here that the welfare of the young son of the parties, called "Billy", is the main concern of this court.

The court heard testimony of the parties, and numerous witnesses, including the testimony of "Billy" Roberts, on the questions before the court.

In taking up the question of custody, the court does so with the full knowledge that the resolve of this matter will, in large part, determine the future of this very young boy. Existing conflicts cannot continue, for if they do, the loser is the 7 year old boy.

There is a line of Florida cases dealing with the subject of custody of children. The rules announced through the years can be but competent guidelines, because it is this court's solemn duty to look to this particular child, and look to the environmental hazards which influence this particular child.

The courts of this land cannot, and should not, take into consideration only the hypothetically perfect environment factors in determining a child's custodian, for no such perfect environment can be found. If such were true, then courts would reach even into homes that are unbroken, and set forth mandates which would be an intolerable burden on society.

This is not to say that our jurisprudence has not developed experience in dealing with this problem. In short, this judicial experience says — "When called upon by our social order to do so, we must do that which, under the peculiar circumstances of each case, will give the particular child his best opportunity to grow up in the absence of environmental factors which will deter his future physical, moral, spiritual and civic well-being, if such factors are known, and if such factors are within the reach of the court to correct."

Recognizing the power of the courts to modify custody awards is the case of Davis v. Davis, 196 So. 614 (1940), in which the father petitioned for change of custody of two minor children who had been placed with the mother in the original divorce decree. In holding that the petition alleging that the mother was an improper person to have custody of the minor children was sufficient should the testimony confirm the allegations, the court said —

"It is well established that minor children are wards of the court and its responsibility is to make and enter such orders touching the welfare and best interests of the child as from time to time may be necessary. If the welfare of the child and its interests require that the custody should be awarded to another, the court will make such an order or decree as to the interests of the child."

On the issue of the fitness of a parent to have custody as affected by the moral standards of that parent the court in Blue v. Blue, 66 So.2d 88, said that —

"An important issue in this cause revolved around the welfare and custody of the minor daughter of the parties hereto whose care was awarded by the chancellor to the appellee father. This child is at the tender age of three years and living in a formative state of growth when decisive impressions of life are consciously and unconsciously being implanted within her moral fibers. She deserves that which can be best afforded under the atmosphere conducive to development under sound spiritual and moral teachings. The welfare of the child is paramount against the wishes of the party seeking custody. Quite naturally, the character and moral conduct of the person seeking custody must be probed and ascertained in the fulfillment of this obligation."

In a case decided in the Lake County Circuit Court in 1954, T. G. Futch, Circuit Judge, the issue was custody of the three minor children of the parties seeking divorce. The children's ages were 8, 6 and 4. The husband, claiming custody, alleged that his wife had been carrying on an affair with another man, including the reception of that man in their home during his absence and that since the institution of the divorce proceedings his wife and said man had almost constantly cohabited together, particularly at night. The circuit court found that the husband's allegations were supported by the evidence and accordingly awarded custody to the father, saying —

"This court is not unaware of the harshness of a decree depriving the mother of the custody of her children, but when, as in this case, the conduct of a mother is in utter disregard of the moral surroundings and welfare of the children, there is no other course for this court in good conscience to follow." Clark v. Clark, 6 Fla. Supp. 90 (1954).

Other cases have recognized that by her conduct a mother may demonstrate a moral unfitness to have custody of minor children. In Koones v. Koones, 149 So.2d 88 (Second District, 1963), the court affirmed the awarding of custody of the three minor children of the parties, aged 6, 5½ and 4 to the father where the court found that the wife was guilty of adultery and was not a fit and proper person to have the care, custody and control of the children. Likewise in Bennett v. Bennett, 146 So.2d, 588 (Second District, 1962), the court affirmed the awarding of custody to the father of the two minor children of the parties. The evidence showed that the wife frequently had dates with other men, staying out with them late at night and that this conduct, after the separation, interfered with her taking care of the children. The court observed that while adultery or marital misconduct in and of itself does not necessarily demonstrate that a parent is unfit to have custody of the children —

> "Where there is a history or continued pattern of parental irresponsibility on the part of the mother, the chancellor may be justified in awarding custody of the minor children to their father."

It must be recognized, however, that in a petition to modify existing custody provisions, a different burden is placed upon the party seeking to change the custody in comparison with the showing required to be made when the issue of custody is first litigated. This difference has been noted in many Florida cases. In Garner v. Garner, 193 So.2d 673 (Second District, 1967), this distinction was clearly stated —

> "The chancellor in an original proceeding, confronted with a divorce decree seeking custody of a child is clothed with broad discretion and his decision concerning the custody of the child in the original proceeding will not be disturbed unless grossly and manifestly erroneous, but once this decision is made, it becomes a final decree of the court based upon the facts and circumstances existing as of the time of the decree and is thereafter not to be materially amended or changed unless conditions are shown to have arisen since the decree, *and then only for the welfare of the child.* Belford v. Belford, 1947, 159 Fla. 547, 32 So.2d 312; Bennett v. Bennett, Fla. 1954, 73 So.2d 274. Once this decree has been entered and the custody established, the chancellor does not have the same degree of discretion in changing or modifying the custody

as he had in the original final decree. The law favors the reasonableness of the original decree and the party seeking the modification has the burden of proving facts justifying modification *and that the change is for the child's best interests.* Duggar v. Duggar, Fla. App. 1962, 143 So.2d 40."

In Frye v. Frye, 205 So.2d 310 (Fourth District, 1967), the court said—

"In order to modify an existing custodial order plaintiff must allege and prove a substantial change in circumstances or conditions, since the time the decree was entered. Sayward v. Sayward, Fla. 1949, 43 So.2d 685; Belford v. Belford, 1947, 159 Fla. 547, 32 So.2d 312; Bennett v. Bennett, Fla. 1954, 73 So.2d 274."

Later the court said —

"Even if a court finds a substantial change in conditions a decree should not be altered unless the welfare of the children would be promoted."

As to the kind of evidence which would be relevant to the custody the court said —

"It is obvious that the changed conditions must bear on the ages and the treatment that the children are receiving under the existing custody order and the treatment they would receive from the contesting party."

A recent case regarding a modification of custody is Klein v. Klein, 204 So.2d 239 (Third District, 1967). In that case the court granted the father's petition to modify the custody set forth in the original decree and granted custody of the child to the father. The mother appealed and the court affirmed stating that —

"Although the law tends to favor the mother over the father in awarding permanent custody of young female minor children, the direct and final test in child custody cases is the welfare of minor children."

In Ritzi v. Ritzi, 160 So.2d 159 (Third District, 1964), the court said —

"The rule applied on a petition to modify a decree for custody is that while the welfare of the child or children is of paramount concern, a final decree awarding custody to one parent being res judicata of the matters involved

and known at the time of the decree, should not be modified to change the custody to the other parent except upon materially changed circumstances, or for material facts unknown to the court at the time of decree, and then only when shown to be essential to the welfare of the child to so order."

As an example of the above, the court stated that —

". . . remarriage of a mother and acquisition by her of a suitable home are not changes of circumstances which of themselves justify a change of custody . . ."

or

". . . when by remarriage or other circumstances the mother becomes or is more affluent than the father who has custody, and thus in a position to do more financially for the child or children, that has not been considered a controlling factor unless the children are not being properly or adequately cared for . . ."

but, said the court —

". . . a change of decreed custody is justified in such improved circumstances of the wife when coupled therewith there are circumstances relating to the present custody which are improper and harmful to the child or children so as to make it manifest that a change of custody is essential to their welfare." (Italics added.)

Thus, notwithstanding the heavy burden placed upon a party who would attempt to alter custody established by previous court decree a court may, and indeed should, modify that custody where there has been a material change in circumstances relevant to custody, and the effect of the present custody is harmful to the child.

It was recognized in the circuit court case of Child v. Child, 4 Fla. Supp. 128 (Dade County, 1953), when the circuit judge granted the father's petition to modify the final decree by changing custody of the children, aged 9 and 5, from the mother when the mother although she tried her best could not adequately show that she could care for the children, and in addition, her fiancé's record and reputation constituted a "cloud from which she cannot fly". The father, on the other hand, had remarried and was able to provide a suitable home for the children. The court said —

"The welfare of the children is, of course, the sole question to be determined under the facts. There can be but

198

one answer. This court is extremely reluctant to separate the children from their mother — with all that the word and appellation connotes — especially children of tender years, but the situation since the divorce in 1950 instead of improving has worsened to the point where prompt and drastic action is necessary so that permanent psychological marks and scars will not mar the future life and happiness of the two minors involved in this action. I do not in any way condemn the mother who, I think, under the circumstances has done the best she could — but it is not enough."

In Klein v. Klein, supra, the court summed up the problem confronting the judges in custody cases, saying —

"The question of whether to remove a child from the custody of its natural mother is one over which judges have agonized from time immemorial."

But taking into account the changes in circumstances, and the mother's immoral conduct, which is definitely harmful to the child, the court can take custody away from the mother. In Wilkerson v. Wilkerson, 179 So.2d 592 (Second District, 1965), the court said —

"It is clearly the law in Florida that when both parents are fit, the custody of young children should be awarded to the mother . . . This rule was established by the Florida Supreme Court in Fields v. Fields, 1940, 143 Fla. 886, 197 So. 530, in which the court said that custody should go to the mother 'other things being equal'. Implicit in this rule is the corollary that a father may be awarded custody if the things are 'not equal'."

Broken homes have a tendency to create a breeding ground for future broken homes. However our jurisprudence has not yet lost sight of the child's relationship to his father and mother, which should be overlooked only in the most flagrant cases.

Courts cannot completely set or precisely prescribe the course of individual or family behavior. However, in cases such as the one before this court, the court has a responsibility to place the child in the care of a parent or custodian who will most nearly fit the role of a parent who will constantly keep foremost in his mind his responsibility to do that which is for the best interest of the child, and consciously refrain from doing that which is obviously against the best interest of the child.

A custodian was selected in this case in 1964. There can be no change by this court without a reason. This reason must be a change of circumstances involving the child and the custodian, which if continued, will be against the child's future, together with the prospects that the new custodian will provide a suitable improvement.

Petitioner came to this hearing armed with testimony from the community in which the custodian mother and child reside. It is interesting to note that the testimony in support of the petition came from both reluctant witnesses and witnesses called by the respondent.

At the last hearing in this cause in which the subject of custody was taken up and considered in 1964, the child was two years of age. During the period from 1964 to 1967, the child has resided with his mother in Orlando, Florida, and during the course of the last three years she has resided with the child in Highlands, North Carolina, a community of less than 1,000 people. Highlands, North Carolina, is a resort area and has a large number of tourists during the summer months.

Without detailing the testimony, the court finds that Mrs. Linda Knight has exposed to the young child, "Billy", during the past three years, an utter disregard for the institution of marriage and the family unit. The court finds that there has been a continued pattern over a period of several years of parental irresponsibility on the part of Mrs. Knight through parading before the minor child frequent dates with men other than her husband, staying out late at night, and entertaining men friends in her home, to the detriment of the welfare of a 5, 6 and 7 year old child.

During the course of talking with the minor child, the court found him to be alert to his surroundings, intelligent and fully knowledgeable to the life that his mother has been leading. In short, it appears that Mrs. Knight is either unconcerned about the effect of her conduct on young "Billy", or fails to recognize that her course of conduct has caused, and will cause serious consequences for the child's future moral and spiritual well-being. The testimony shows sufficient change in circumstances since 1964 to warrant a change in custodial arrangements for this young boy, "Billy". This court would be derelict if it did not take into consideration the impact of Mrs. Knight's disregard of the moral standards that are so important in rearing a young boy. If this young man were to continue to live in an environ-

ment where marriage and adherence to marital vows are casually disregarded, it is not unreasonable to expect him to grow into manhood with the same irresponsibility. It is this court's duty to remove this child from such an environment.

The child's testimony will not be detailed here but it is sufficient to say that this court is satisfied, from a long conference with the child, that his testimony was worthy of consideration, and has been considered in this order.

The court further finds that since 1964 the petitioner has remarried and lives in a comfortable home in the vicinity of Winter Haven, Florida, and has not only the facilities, but the apparent desire, to rear this child under a suitable environment.

It is thereupon ordered that William E. Roberts be and he is granted the full care, custody, and control of the minor child of the parties, William E. Roberts, Jr., and respondent, Mrs. Linda Knight, is commanded to forthwith deliver the child, together with the child's clothing and other personal effects, to the petitioner, William E. Roberts.

It is further ordered that the cross-petition of the respondent, Linda Knight, for increased child support and reduction in visitation privileges is denied.

It is further ordered that all prior provisions of this court that conflict herewith are by this modification rescinded and held for naught.

It is further ordered that reasonable rights of visitation at reasonable times and places are reserved to the respondent, Linda Knight.

The matter of attorneys' fees in this cause has been disposed of by prior order of the court except that a stipulation of the parties notwithstanding such order is hereby approved and, therefore, it is ordered that the petitioner, William E. Roberts, shall pay the respondent's attorney, Salvatore Robert Scarito, the sum of $700 at the rate of $50 per month, commencing on or before the 10th of July and each and every month thereafter until the total sum has been paid.

The court specifically retains jurisdiction of the parties to the cause and the minor child, William E. Roberts, Jr., for such other orders as may be in the best interest of the child from time to time, including the setting of specific visitation privileges for the mother, Linda Knight.