542 So.2d 487 (1989)
Patricia L. IANNONE, Appellant,
v.
Guy E. IANNONE, Appellee.
No. 88-1451.
District Court of Appeal of Florida, Fifth District.
May 11, 1989.
Mary M. Dunn of Withlacoochee Area Legal Services, Inc., Ocala, for appellant.
Ben Daniel, Jr., Ocala, for appellee.
DAUKSCH, Judge.
We affirm the order of modification in this case because we cannot say that there was such a breach of discretion that a reversal is warranted. The broad discretion given a trial judge in these most-difficult cases is based upon sound case law, Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), and common sense. The trial judge has a much better perspective on these matters, with historical knowledge, the witnesses in view, the testimony before him and the experience behind him.
AFFIRMED.
GOSHORN, J., concurs.
SHARP, C.J., dissents with opinion.
SHARP, C.J., dissenting.
The Florida Supreme Court and all the district courts consistently hold that a party seeking to modify a dissolution judgment concerning child custody, carries a heavy burden to show there has been both a substantial change in circumstances since the prior custody decree, and that a change in custody is in the best interest of the child or children. E.g., Bennett v. Bennett, 73 So.2d 274 (Fla. 1954); Belford v. Belford, 159 Fla. 547, 32 So.2d 312 (1947); Cole v. Cole, 530 So.2d 467, 468 (Fla. 5th DCA 1988); Delgado v. Silvarrey, 528 So.2d 1358, 1361 (Fla. 3d DCA 1988); Nissen v. Murphy, 528 So.2d 502, 504 (Fla. 2d DCA 1988); Jones v. Vrba, 513 So.2d 1080 (Fla. 5th DCA 1987); Crippen v. Crippen, 508 So.2d 1339, 1340 (Fla. 4th DCA 1987); Bragassa v. Bragassa, 505 So.2d 556 (Fla. 3d DCA 1987); Warren v. Warren, 475 So.2d 736 (Fla. 2d DCA 1985); Ballah v. Poole, 453 So.2d 924, 925 (Fla. 2d DCA 1984); Callahan v. Cambron, 445 So.2d 394 (Fla. 5th DCA 1984); Iljazi v. Iljazi, 436 So.2d 326 (Fla. 2d DCA 1983); Giachetti v. Giachetti, 416 So.2d 27, 29 (Fla. 5th DCA 1982); Adams v. Adams, 385 So.2d 688, 689 (Fla. 3d DCA 1980); Stricklin v. *488 Stricklin, 383 So.2d 1183 (Fla. 5th DCA 1980).
If this hearing and record involved an initial custody determination, I would have no hesitation in affirming the award of custody to appellee, the father. However, a trial judge does not possess the same degree of discretion in modification proceedings as he does in initial custody determinations. Belford. A parent seeking to modify an existing custody order carries an extraordinary burden. Zediker v. Zediker, 444 So.2d 1034, 1036 (Fla. 1st DCA 1984); McGregor v. McGregor, 418 So.2d 1073, 1074 (Fla. 5th DCA 1982). The record here fails to establish a sufficient change in circumstances to support modification of the initial custody award to appellant, the mother. Moreover, it is not clear at all that the best interest of the children will be served by the change.
Appellant's major fault is that she is less economically able to care for the two children involved in this case than is appellee. She married appellee when she was 17 years old, and did not complete her high school education. She has no job skills or training and can only work at the lowest paying jobs available. However, these conditions existed at the time of the parties' dissolution, and can therefore not be used as a basis to support the modification of custody. E.g., Belford; Adams; Walfish v. Walfish, 383 So.2d 274, 275 (Fla. 3d DCA 1980).
The 1985 dissolution decree awarded appellant nine months of rehabilitative alimony (now defunct), and custody of the two minor children. The decree was based on the agreement of the parties. Appellant has been supporting the children and herself on a minimal amount of child support, and working at various part-time and temporary employments. Due to her lack of income, appellant also receives food stamps, charity from her church, and she qualifies for free medical care under various clinic and hospital programs.
At the modification hearing, appellee criticized her for being content to be on "welfare." But even if this is a fair criticism (which I question) appellant testified she had tried without success to find full time employment. Many non-skilled jobs available in the community require her to work at night or on the weekend, and this would make it difficult to properly care for her two children, ages 10 and 8.
Appellee also criticized his former wife for not feeding the children enough or properly, or dressing and grooming them well enough. If appellant lacks monies for food and clothing, under the circumstances established in the record, it strikes me as not being primarily her fault. If appellee paid her a minimal bit of alimony or more child support, this problem might vanish. There was no evidence here that appellant was squandering any monies available to her.
The young son of the parties is learning disabled and has various genetic problems which require monitoring by health experts, and which have and will require future surgeries. A fair reading of this record shows that appellee and appellant have been wrangling and fighting over when and who should treat this child since 1985. That is partly the fault of the new Shared Parental Responsibility Law[1] which requires parents with shared parental responsibility to mutually make such decisions,[2] and partly their mutual faults.
The joint responsibility concept does not work in some cases, such as this, where the parties can not agree on what time it is, even if they are looking at the same clock. It is then the job of the dissolution court to place the responsibility for such decisions on one parent or the other. The court did not do this even though appellant properly filed a petition to obtain such relief long prior to appellee's petition to modify.
Appellee also alleged that appellant favored the parties' daughter over the son, and that she verbally abused, and was short tempered with the son. However, none of those charges were proven at the hearing. To the contrary, the only non-family *489 witnesses who testified (a church counselor, a minister, a friend, and two of the childrens' teachers), all described appellant as a loving, concerned and involved parent. There was also testimony that the children were much closer to their mother emotionally than appellee, and that they did not want to move in with their father because they did not like his new wife. The new stepmother would become their primary and almost full time care-giver because appellee was out of his home working two jobs most of the time. The son's teacher testified the custody change would mean a change of school for him, which could be detrimental to his progress in the special education program.
All of the adverse circumstances concerning appellant's custody existed at the time of the parties' dissolution. Appellant was poorly educated, impoverished, and unable to communicate verbally with appellee. (The parties have been writing notes back and forth ever since they separated.) Their son had health problems. Nothing basically has changed since 1985,[3] except that appellant and the two children's standard of living has slipped downwards. Appellee's has risen. He has acquired a new wife and child, and has economically bettered his situation through hard work at two jobs. He is to be commended and congratulated on his success. But this is not a valid basis to modify custody. Adams; Stricklin; Hutchins v. Hutchins, 220 So.2d 438 (Fla. 2d DCA), cert. denied, 229 So.2d 869 (Fla. 1969).
NOTES
[1] § 61.13(2)(b)2., Fla. Stat. (1985).
[2] § 61.13(2)(b)2.a., Fla. Stat. (1985).
[3] Evidence supporting change of custody must have occurred since entry of the final judgment. Belford v. Belford, 159 Fla. 547, 32 So.2d 312 (1947); Adams v. Adams, 385 So.2d 688 (Fla. 3d DCA 1980); Walfish v. Walfish, 383 So.2d 274 (Fla. 3d DCA 1980).