WALLACE, Judge,
Concurring.
I fully concur in Judge Villanti’s thorough and well-reasoned majority opinion. I write separately to address the trial court’s linguaphobic edict forbidding the Mother from speaking the Spanish language to her daughter.
The order under review provides, in pertinent part, as follows: “Under no circum *468 stances shall the Mother speak Spanish to the child.” Our record does not reflect the level of the child’s fluency in Spanish. Presumably, the child’s ability to speak the Mother’s native tongue has deteriorated during the several years that the trial court’s “NO SPANISH!” order has been in effect. But the Mother will violate the trial court’s order by uttering even the most simple Spanish phrases to her daughter, such as te quiero,[2] feliz cumpleaños,[3] or te extraño,[4] The Mother is also prohibited from addressing her daughter with any Spanish terms of endearment, for example, querida,[5] There is no basis in the record for such a restriction. But the problems with the language restriction go beyond the lack of record support. The prohibition against speaking Spanish improperly tends to isolate the child from the Mother and her family and impermissibly violates the Mother’s basic rights under the federal and Florida constitutions.
The Mother is a native of Venezuela. She speaks English fluently, but Spanish is her native tongue. The Father knew these facts about the Mother when he married and had a child with her. The Father cannot be surprised or complain that the Mother may — from time to time— choose to speak with her daughter in Spanish. Most parents would be pleased to have their child acquire a second language. This should be particularly true for the Spanish language in Florida, where approximately twenty per cent of the population speaks Spanish. See MLA Language Map Data Center, http://www.mla. org/map_data (under the heading “US, State, Region, or Division” select “State”; “Florida”; then “Show Results”) (last visited Jan. 18, 2015).
As Judge Villanti properly points out, the trial court’s prohibition on the Mother’s ability to speak to her child in Spanish has an adverse effect on the child’s ties to her mother and the child’s Hispanic heritage. But the adverse impact of the order is even broader. Although the Mother is fluent in English, the members of her extended family may not speak English at all — or, at least not as fluently as the Mother. The trial court’s interference with the child’s ability to learn to speak Spanish from the Mother will make it difficult for her to communicate with her maternal grandparents, aunts and uncles, cousins, and their friends to the extent that these persons are not fluent in English. See Lupe S. Salinas, Linguaphobia, Language Rights, and the Right of Privacy, 3 Stan. J. Civ. Rts. & Civ. Liberties 53, 67 (2007). Neither the Father nor the trial court can properly cut the child off from meaningful contact with her maternal relatives by prohibiting the Mother from speaking to the child in Spanish.
The trial court’s order also violates the Mother’s most basic rights. More than ninety years ago, the United States Supreme Court declared that the agents of the state may not tell parents what languages they may teach their children. Meyer v. Nebraska, 262 U.S. 390, 401, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (“[T]he individual has certain rights which must be respected. The protection of the Constitution extends to all, to those who speak other languages as well as to those born with English on the tongue.”); see generally William G. Ross, A Judicial Janus: Meyer v. Nebraska in Historical Perspective, 57 U. Cin. L.Rev. 125 (1988) (discussing the historical background of the United *469 States Supreme Court’s decision in Meyer, including the anti-German hysteria following the entry of the United States into World War I that led many states to enact laws restricting the instruction of children in foreign languages, especially German). Here, the trial court’s order improperly infringes on the Mother’s constitutional right to determine the language or languages about which her child may receive instruction.
In addition, the Florida Constitution guarantees its citizens the right of privacy. In this regard, Article I, section 23 provides, in pertinent part, as follows: “Every natural person has the right to be let alone and free from governmental intrusion into the person’s private life except as otherwise provided herein.” Undoubtedly, the sphere of private life in which one must be let alone, free from governmental intrusion, includes the right to speak with one’s child in the language of one’s choosing and not to have that choice dictated by the agents of the state. See Kirton v. Fields, 997 So.2d 349, 352 (Fla.2008) (“Parental authority over decisions involving their minor children derives from the liberty interest contained in the Fourteenth Amendment to the United States Constitution and the guarantee of privacy in article I, section 23 of the Florida Constitution.”).
Sadly, the trial court’s order in this case prohibiting the Mother from speaking Spanish to her daughter is not an isolated incident. One commentator reports that trial judges in Texas and Nebraska have issued similar edicts prohibiting parents from speaking Spanish to their children. Salinas, supra, at 69-72. Discussing the constitutional issues raised by one of these cases, the editorial board of The Houston Chronicle opined, ‘We skirt dangerously close to losing a basic right when we allow a judge, for whatever noble purpose, to dictate what we can say and how we can say it, even in our own homes.” Salinas, supra, at 70 (quoting Editorial, Language Barrier: No Spanish Order Punctures First Amendment, Hous. Chron., Aug. 23, 2000, at A26).
Under section 61.13(2)(c), Florida Statutes (2012), the trial court has broad authority to determine all matters relating to parenting and time-sharing of minor children in accordance with the best interests of the child. However, the trial court’s authority is not so broad that it extends to controlling what language or languages a parent may speak with his or her child. Cf. Bennett v. Bennett, 73 So.2d 274, 279 (Fla.1954) (holding that a trial court had no power to tell the parents what schools their children should attend); Abbo v. Briskin, 660 So.2d 1157, 1161 (Fla. 4th DCA 1995) (holding that a trial court had no power over the religious beliefs and training of a child over the specific objection of one of the parents). In my view, Florida’s trial courts have no business telling parents what languages they must speak or must not speak with their children.

. "I love you.”

. "Happy birthday.”

. "I miss you.”

. "Dear” or "dear one.”