SMITH, HAROLD S., Associate Judge.
The appellant, James Franklin Garner, III, and the appellee, Jane Norton Garner, were divorced and in the original decree of *674 divorce, the court ratified a stipulation between the appellant and appellee agreeing that the custody of the minor children should be in the husband-appellant. The husband’s parents, who were the paternal grandparents of the children, were temporarily given the physical custody of the children. The reason given for placing the children in the custody of the father and of the paternal grandparents was that the mother was emotionally unstable and unfit to have tlie custody. The original decree provided for the application by the mother for custody at such time as she was rehabilitated. Fifteen months after the divorce decree was entered, the mother applied for custody and the lower court granted the custody to the mother.
The appellant, the father of the children, has appealed from this order, and alleged as follows:
1. That the mother has failed to show that conditions have materially altered as to her emotional situation.
2. She has failed to show that a change of custody would be in the best interest of the children, whose ages are seven and eight.
He argues further that the only change in her situation is her remarriage and the acquisition of a home. He points out that the Chancellor made no finding on the question of her mental rehabilitation nor did he find that the present custody was improper or harmful. It was stipulated by the parties that the paternal grandparents were very fine and economically able to support the children and the court commented that they were wonderful people to have the custody. The appellant argues that there must not only be a change in the wife’s circumstances but the present custody must be harmful to the children in order to warrant a change. He further argues that the court’s explanation of why he was changing his custody showed that his concern was for the mother rather than for the welfare of the children.
The challenged statement of the lower court is as follows:
“My first thought about this was that your marriage is of such duration that there is some question possibly about— there’s a possible question — some doubt is being cast upon your emotional stability by the testimony I have heard here, that it might be a good idea to allow these children to stay in their present custody for such period of time as is necessary for me to feel that you were suitable to have the custody of the children again but the thought that you have gone through this so long, and this has been the second hearing on this, it has undoubtedly been a lot of trouble and a lot of expense for you and you seem to have held up very well under it and the prospect that you would have to go through this again and possibly another, let’s say an ideal period, when he would be getting out of law school and there wouldn’t be any question about his duty to support his children immediately upon his getting a job. I have thought for awhile that this might be the way this might be best solved, but I don’t think, as I pointed out the things involved in it, that you would have to go through again and that this long period of time would elapse before you would actually have any real close contact with your children again. I don’t think it would be quite fair, while I think they are in a fine family now and they have a fine home, I know the decisions are that the mother should have an opportunity and the natural father should have an opportunity to establish a relationship with their children that this may be of — I think they say this is about equal with the children. This has made me feel that the custody of the children should be changed at this time.” (emphasis supplied)
The appellee-mother maintains this merely shows that the court judged the mother’s mental stability in the light of her ability to withstand the pressure of two hearings, *675 the trouble and the expense of same and since the mental stability of the mother was the only issue this was the only reason custody had been taken from her subject to her rehabilitation. On the issue of her mental rehabilitation, the appellee-mother presented testimony of two psychiatrists who had seen her for determination of whether or not she was emotionally capable of rearing her children. One of the doctors saw her for an hour, more or less, and the other on two visits saw her for a total of seventy minutes. Their testimony was that she was emotionally stable enough to care for her children.
One of the mother’s psychiatrists, a Dr. Shipton, testified that he had not interviewed the children and, “ * * * there are always residuals, so it is a matter of whether these residuals are disabling or not.” He further stated that he had not consulted with the treating physician, Dr. Koenig, and that he did not perform any of the standard tests. The mother’s other consulting psychiatrist, a Dr. Fessenden, stated that he had made no diagnosis, particularly, of the mother and that he had had no contact with any of her prior treating physicians nor had he had any of their reports. On the other hand, the treating physician, who had treated the mother during the earlier episodes in her life testified that after treating her for several months that he found the mother to be psychotic and that she was serious about her suicide attempts earlier. He further stated, “ * * she worked because she didn’t want to be home taking care of the children.” He further stated that as of the termination time of her treatment, she was a schizophrenic, a schizoid-affective in good remission. He went on to say that this will recur — in fact, it did recur after her discharge from his treatment in the form of her making another suicide attempt. He stated that in the face of stress, she had regressed to a psychotic condition. He flatly said, “I feel she is not a good mother.” He went on to say that her situation can become active again and that it would be a gamble to place the children back with her and that his prognosis was that her condition will reappear. Dr. Koenig further stated, “ * * * her having the children is one of the causes of her illness, one of the pressures — she has been without that pressure.” His inference was that her release from her association with the children had relieved the pressure that had caused her mental condition. He testified that her removal from marital discord does not alter her underlying chronic schizophrenia and does not alter her underlying feelings that arose following the birth of her first child. A Dr. Palmer testified that one of the children of the marriage had been quite emotionally upset prior to coming to the grandparents. He testified that this child is well and happy and that, in his opinion, it would be in the best interest of the children to remain in a stable situation because to remove them from this could cause further upsets. The record is replete with testimony of several lay witnesses of the progress being made by the children in their situation of a stable home with their grandparents.
In all proceedings relative to the custody of minor children, the guiding star of the determination is the welfare of the children—Jones v. Jones, 1945, 156 Fla. 524, 23 So.2d 623; Phillips v. Phillips, 1943, 153 Fla. 133, 13 So.2d 922; Wooten v. Wooten, Fla.App.1960, 160 So.2d 746. While it is quite natural for the human heart to open itself to the plight of either or both of the parents in such a situation, this basic consideration of the welfare of the children must take supreme position as against the welfare or the interests of the parents. The Chancellor in an original proceeding, confronted with a divorce decree fixing custody of a child, is clothed with broad discretion and his decision concerning the custody of the child in the original proceeding will not be disturbed unless grossly and manifestly erroneous. But once this decision is made, it becomes a final decree of the court based upon the facts and circumstances existing as of the *676 time of the decree and is not thereafter to be materially amended or changed unless on altered conditions shown to have arisen since the decree, and then only for the welfare of the child. Belford v. Belford, 1947, 159 Fla. 547, 32 So.2d 312; Bennett v. Bennett, Fla.1954, 73 So.2d 274. Once this decree has been entered and the custody established, the Chancellor does not then have the same degree of discretion in changing or modifying the custody as he had at the original final decree. The law favors the reasonableness of the original decree and the party seeking the modification has the burden of proof to show facts warranting modification and that the change is for the child’s best interests. Duggar v. Duggar, Fla.App.1962, 143 So.2d 40. In the Duggar case, this Court, speaking through Chief Judge Shannon, said:
“If the Chancellor, on the basis of conflicting facts, had awarded the custody of the infant to the mother originally, his broad discretion would have been accorded great weight on appeal, but, having entered a decree in favor of the husband and then upon a petition for modification having changed the custody of the child, it is the duty of this court to review his action and to determine whether or not there was any substantial change in the conditions that existed at the time of the original decree. * * * ”
The Duggar case cited the case of Belford v. Belford, 1947, 159 Fla. 547, 32 So.2d 312. The Court said:
“ ‘The presumption favors the reasonableness of the original decree, and the party seeking modification has the burden of proof to show facts warranting modification and that the change is for the child’s best interest.’
“The Court went on to say:
“ ‘It appears that probably the Chancellor considered this matter in the same light as it would have been considered by him had no former decree been entered. There are valid reasons for the difference in degree of discretion which may be exercised by the Chancellor in these two classes of cases. He is vested with the right of exercise of a broader discretion in entering the original final decree because then it devolves upon him to determine the relative fitness of the parties for the custody of the child and to determine from all the facts what decree will be for the best interest of the child, but when he has entered that decree and it becomes final it is res adjudi-cata of those facts and circumstances and cannot be modified or changed thereafter, unless it appears that there are some pertinent facts which the court did not know at the time that decree was entered, or unless there is an altered condition shown to have arisen since the decree. * * * ’
“ ‘It is important that this rule should be observed, else there could never be any finality of the judicial determination of the custody of children.’ ” (emphasis supplied)
 In the case at bar, the overall impact of the treating psychiatrist’s testimony was to the effect that the mother’s mental problem was incurable and would recur. It further bore out the point that the children were a part of the underlying cause of her mental problem and constituted one of the pressures that caused her to become mentally unstable. It would seem therefore that putting the children into the home with the mother and subjecting her again to the same pressures which had caused her earlier mental illness, would not be in the best interest of the children, but would probably be detrimental to the mother’s best interest. We must always realize, however, that the best or worst interest of the mother is not the consideration for a change in custody. The welfare of the children is a pole-star towards which all findings must *677 direct themselves. While it is completely natural, Christian and humane to feel compassion for a mother who is separated from her children through illness or disability over which she has no control, this compassion must not be allowed to work to the detriment of the children or to expose them to a situation which could conceivably cause them to become upset again emotionally as they were when they first left the mother and went to live with the paternal grandparents. Here the Chancellor made no finding that the mother had been mentally rehabilitated. In fact, he expressed doubt that she was emotionally stable enough to care for the children and suggested that it might be a good idea to leave the children where they were for such time as was necessary for him to feel that she was suitable to have the children again. The court found that the children were also very well off where they were, saying, “ * * * there’s no question in my mind that they are very fine people, that they have the'interests of these children at heart, they are — wonderful people to have the custody of these children.” (emphasis supplied). While the Chancellor’s compassionate concern over the plight of the mother is commendable, and it is not only human but humane for him to consider her when he stated that he felt sorry that she has gone through this so long and it has been undoubtedly a lot of trouble and a lot of expense to her and to face a prospect she’d have to go through this again, these thoughts alone are insufficient to warrant a change of custody.
In view of the foregoing, and having the overall welfare and best interests of the children as the primary and controlling interest, the decree of the Chancellor modifying the custody should be and the same is hereby reversed, and the custody of these children is retained in the father and the paternal grandparents under the provisions obtaining in the original final decree.
LILES, Acting C. J., and HOBSON, J., concur.