### FINKLEA v. CAMPBELL.
No. 67-201.
Juvenile and Domestic Relations Court, Palm Beach County.
March 18, 1968.

Shepard P. Lesser, West Palm Beach, for the plaintiff.

Philip H. Reid, Jr., Palm Beach, for the defendant.

LEWIS KAPNER, Judge.

This cause was presented upon a petition to change the custody of the minor children of the parties from that of the mother, Rejeane Campbell, formerly Rejeane Finklea, to that of the father, Donald Edward Finklea.

The court record discloses that the parties were married on June 4, 1953, and separated on March 31, 1957, they were divorced one year later, on March 31, 1958. Both parties were in their mid-twenties at the time and their three children ranged in age from

about one to four years, the children now range in age from eleven to thirteen years.

At the time of the final decree, Mr. Finklea apparently was a student at Southern Methodist University. Both parties have since remarried.

Mrs. Campbell remarried in late 1959, and, subsequently, adopted the faith of the Jehovah's Witnesses which she professes at this time for herself and her children. Her practice of that religion and matters stemming from her practices and beliefs of the faith of the Jehovah's Witnesses underline many of the issues presented before this court.

The plaintiff raises no objection to the parental environment provided by the Campbells as it existed prior to a year or two ago and he stipulates that no grounds then existed for the transfer of custody. He claims, however, that in the past year or two the circumstances have changed and deteriorated substantially so as to justify this court transferring custody and that it is in the best interest of the children to do so. He cites specific instances of this and has presented testimony as to the general atmosphere and environment of the household. In addition to this, he has presented evidence of serious behavior problems among the children which he claims are caused by the manner of family environment which the Campbells have created. He does not question the integrity and sincerity of the Campbells but claims that their methods and theories of child raising, their religious excesses, their severe and unwarranted discipline, and the general atmosphere which they have created within their home have been detrimental to the welfare of the boys.

This evidence included testimony of the boys themselves. The boys also testified that it was their desire to live with the plaintiff and his wife. In fact, the two oldest boys ran away from home in November of 1967, and when they were apprehended they expressed their desire to live with their real father, the plaintiff herein. The Campbells themselves admit that the boys frequently express their desire to live with their real father.

Certain complaints in the petition are directly related to the religious beliefs and practices of the Campbells. These items are listed in (f), (g), (h), and (i) (except for the references to household chores) of paragraph 5 of the petition. These matters, because they directly relate to the religious beliefs of the Campbells, may not be considered by this court because of the right of free exercise of religion guaranteed respondents in the First and Fourteenth Amendments to the Constitution of the United States and Section 6, Declaration of Rights, Constitution of the State of Florida.

If these were the major complaints in this case, this case would be dismissed. Even if the court were not prohibited from considering matters of this kind, they do not appear to be of major consequence sufficient to justify a transference of custody. Even the allegations that they have contributed to the boys' poor performance at school are not compelling because this court does not feel that their problems in school are related to their religious activities. Nor is this court free to impose its own value judgment over the relative merits of religious or secular training.

Although the plaintiff listed many items, the matters of most importance can be distilled as follows —

1. The children have recently become serious behavior problems.

2. The circumstances have changed substantially since the final decree and it would be in the best interests of the boys to transfer custody.

3. The Finkleas could provide a better atmosphere and environment for the boys and it would be for the welfare of the children to place them in their custody.

4. The discipline meted out by the Campbells is severe and, in many cases, unwarranted.

5. The boys themselves have expressed a strong desire to live with their real father and they are old enough to make a rational decision regarding their custody.

It is undoubtedly the law of this state that the proper custody of a minor child of divorced parents is a proper subject for judicial concern at any time by the court which granted the decree of divorce. Belfore v. Belfore, 32 So.2d 312. But before this court can transfer custody there must be a material change in circumstances from the time of the final judgment, and then only for the welfare of the children involved. Garner v. Garner, 193 So.2d 673. As the court stated in that case at page 675 —

> The chancellor in an original proceeding, confronted with a divorce decree fixing custody of a child, is clothed with broad discretion and his decision concerning the custody of the child in the original proceeding will not be disturbed unless grossly and manifestly erroneous. But once this decision is made, it becomes a final decree of the court based upon the facts and circumstances existing as of the time of the final decree and is not thereafter to be materially amended or changed unless on altered conditions shown to have arisen since the decree, *and then only for the welfare of the child.* [cases cited] Once this

decree has been entered and the custody is established, the chancellor does not then have the same degree of discretion in changing or modifying the custody as he had at the original final decree. The law favors the reasonableness of the original decree and the party seeking the modification has the burden of proof to show facts warranting modification and *that the change is for .he child's best interests* . . .

\* \* \*

It is important that this rule should be observed, else there could never be any finality of the judicial determination of the custody of children.

Thus, to change custody, two elements must be present — (1) A change of circumstances, (2) It must be in the best interest of the children.

At the time of the final decree, the children were of very tender years and neither party was remarried or had any immediate expectation of remarriage. The chancellor had very little choice in the matter since the law and custom in Florida was, and still is, that the custody of young children should go to the mother, other things being equal. Wilkerson v. Wilkerson, 179 So.2d 592; Fields v. Fields, 197 So.2d 530. It would be inconsistent and illogical to hold that a mother should be awarded the custody of children of young age, but that the court cannot consider the rights of the father equal with the rights of the mother when the children are no longer infants and the father has remarried, particularly when the children themselves have developed and expressed a desire to live with their father.

Even though the rights of the father and mother are equal to each other, they are subordinate to the welfare of the children, and, since the children have been in the mother's custody, the father has the burden of proving that it is in the best interest of the children to have custody transferred. Garner v. Garner, supra. See also Ritsi v. Ritsi, 160 So.2d 159, and Prevatt v. Penney, 138 So.2d 537. This necessitates a determination as to the merits of the plaintiff's complaint, particularly with re'r ence to the desires of the boys themselves.

The evidence clearly established that ⁺ⁿ⁻ boys are having serious behavior problems. They are doing e⁊ .remely poorly in school, although they have the intelligence to d⁄, adequate work; they have lied and stolen more than a normal ⁊mount; the two oldest boys recently ran away from home; and they have generally misbehaved at school.

There seems to be little dispute as to this fact. In fact, even the Campbells introduced evidence to establish this. However, the causes of their behavior is in dispute and there is little direct and

compelling evidence that their problems are substantially caused by the atmosphere and nature of the parental upbringing provided by the Campbells, specifically, the severe discipline, rigid demands of religious practices, the lack of parental affection and other matters complained of by the plaintiff.

For example, there was no conclusive professional evaluation of the children other than that of Mr. George McKay, a child guidance counselor who recently attempted to help Donald and Michael deal with their problems. He appeared to have been fairly familiar with the two boys (he had formerly seen Michael three times and Donald two times) but when asked if he could give a professional opinion as to the reasons for their problems, he testified that it was beyond his professional capacity.

A psychological evaluation conducted by Mr. Warren Tatoul on January 11, 1966, does not give us any more insight. Although that report states that "by resolving the interfamilial difficulties, the boys' home environment could reach a state of relative adjustment and security", it did not state whether this was directed against the Campbells or the Finkleas (according to the report, the boy was living with the Finkleas at the time) nor does it state the nature of these difficulties. That information would be indispensable prior to arriving at a rational determination as to whether custody should be transferred.

Of course, the boys themselves strongly desire to leave and it may be argued that this is proof enough that the family environment provided by the Campbells is the cause of their difficulties. But that line of reasoning may be putting the cart before the horse since it would certainly be just as logical to assume that the changing desires and attitudes of the boys may be causing an internal conflict within themselves resulting in their behavior and performance problem.

In addition, other than the fact of their desire itself, nothing in the boys' testimony provides a strong link between their home environment and their lying, stealing, and other behavior problemes.

But the fact remains that all the boys testified that they definitely desired to live with the Finkleas — there does not seem to be much doubt as to their desires in this regard. The boys range in age from eleven to thirteen years and are intelligent. Their desires and opinions, so long as they are not based upon whim or caprice, are entitled to be given weight in determining who shall have custody of them. Marshall v. Reams, 14 So.2d 95. That case, although decided in 1893, is still cited today and the language and law used therein is still applicable. That case said —

. . . the choice of a child, where it has reached the age of intelligence and discretion, also plays an important part in cases of rival claimants to the same custody. It is said in Church on Habeas Corpus, section 447: "where the child has reached the age of discretion it will often be allowed to make its own choice although the person chosen is not the one whom the court would voluntarily appoint. But this is no controlling right of the infant. It is not entitled to its absolute freedom from all custody, but an adult is. It is not the whim or caprice of the child which the courts respect, but its feeling, its attachments, its preferences, and its probable contentment; and it is a well settled rule of law that whether the court will regard the preference of an infant depends upon the reasonableness of his wish, and the intelligence which he manifests . . .

The decisions in this country do not fix any definite number of years when the age of discretion begins, but mental capacity is the test; and when the minor shows sufficient capacity mentally to exercise an intelligent choice, and no objection can be made to the person chosen the court will ordinarily allow such choice to prevail. Church, Habeas Corpus, section 443. In re Goodenough, 19 Wis. 291, Chief Justice Dixon said that, "When the infant is above the age of fourteen years, he must, it seems, in every case, choose for himself. The court will not compel him, upon habeas corpus, to submit to parental authority." Whether or not this be the correct rule we do not say, but the mental capacity of the child, and the reasonableness of its choice, will be considered in doubtful cases in determining a proper custody.

Some states have attempted, by statute, to place an age of discretion where the child could choose who he desires to live with. In Georgia, it is the age of 14 unless the person is unfit to have custody. In Ohio, Illinois, and Utah, the age is 10 years. A complete annotation on this subject may be found in 4 ALR 3rd., beginning at page 1396.

If anything, children of today are more aware and mature than their counterparts in 1893, and their opinion and desires on these matters should be given great weight unless based on whim or caprice.

Recent cases support this view. In Cone v. Cone, 62 So.2d 907, the court held that the testimony of children who were eleven and eight years old, while not controlling, was entitled to special consideration in determining the question of custody.

Pollack v. Pollack, 196 So.2d 771, said — "With the possible exception of the youngest, children who ranged in age from 9-17 years were of an age which entitled their stated custody preferences to be given some weight by the chancellor."

This rule is particularly applicable, where, as here, the boys, particularly the two oldest, are having serious behavior problems, are intelligent, and are familiar with both families.

It is thereupon ordered that the custody of the three children be transferred from Mr. and Mrs. Campbell to that of Mr. and Mrs. Finklea, effective April 1, 1968, with Mrs. Campbell retaining the right of reasonable visitation.

This order is not res ad judicata as to the issues presented before the court, but it is the desire of this court to make this decision permanent by the time the 1968-1969 school year arrives.

It is further ordered that an investigation by the Palm Beach County Juvenile and Domestic Relations Court be conducted and a report submitted on or before July 15, 1968, so that this court can then determine whether the welfare of the children has been served by this transfer and whether their future welfare will be served by entering an order making the custody arrangement permanent. If either party wishes to modify this order it would be advisable to file the appropriate papers early enough so that the matter may be acted upon prior to the 1968-1969 school year.

It is further ordered that Mr. Finklea's support obligation may be suspended but that he be current up to the time the children are transferred to his custody and that he pay for the cost of their moving.

Jurisdiction of this cause is retained for the purpose of making any further orders serving the welfare of the children.