## Gail L. STICKNEY v. Peter C. STICKNEY

[742 A.2d 1228]

No. 99-031

October 8, 1999. Plaintiff Gail Stickney appeals a reduction of the maintenance award she received in 1991 following her divorce from defendant Peter Stickney. She argues that the trial court erred in finding that there existed a change in circumstances, pursuant to 15 V.S.A. § 758, to justify such a reduction. She further argues that even if a change in circumstances exists, the court abused its discretion by modifying her permanent spousal maintenance award from $1,800 per week to $0. We affirm the trial court's finding that a change of circumstances has occurred, but reverse and remand its finding that the maintenance award should be reduced from $1,800 to $0.

Plaintiff and defendant were married on August 26, 1966. The marriage produced two children, both of whom have attained the age of majority. At the beginning of the marriage, plaintiff worked as a medical secretary and provided most of the financial support for the parties while defendant attended medical school.

Following the birth of their first child in 1970, plaintiff stopped working outside the home. After defendant's graduation

from medical school that same year, defendant started a practice and worked long hours establishing it. During this time, plaintiff was the primary caregiver to the children, managed the couple's finances and organized their social life. In 1989, the couple began to experience financial difficulties, brought on in part by their lavish spending and defendant's back problems which rendered him unable to work for a period of time. In August 1990 plaintiff filed for divorce.

After the parties had separated, plaintiff received financial and emotional support from Mark Stickney, defendant's brother. A divorce was granted on December 20, 1991. In its decree, the family court awarded plaintiff $1,800 in permanent maintenance, based in part on the fact that plaintiff had been out of the work force for twenty years and had no experience or vocational skills to enable her to support herself in a manner approximating the standard of living established during the marriage.

In June 1992, the parties entered into a stipulation agreement temporarily reducing defendant's maintenance obligation to $1,200 per week. This temporary reduction took into account the fact that defendant had filed for bankruptcy and that he had agreed to assume the parties' significant debt owed to the IRS. Defendant's maintenance obligation would return to $1,800 per week by June 1998 at the latest, according to a schedule based on his retiring of the parties' tax indebtedness.

In January 1998, defendant filed a motion to modify spousal maintenance, alleging that his income had failed to meet projected increases and his practice's operating expenses substantially exceeded the court's projections anticipated in the final divorce order. He further offered as support for a change in circumstances the fact that plaintiff had made no effort to complete her education and obtain employment as contemplated by the prior

order, and that plaintiff's standard of living had substantially improved because of the financial support she received from Mark Stickney.

Following a hearing on defendant's motion in July 1998, the court found defendant had met his burden and demonstrated a change in circumstances which justified a downward modification of maintenance for three reasons. First, notwithstanding the fact that defendant continued to work at a pace equal to or exceeding his efforts at the time of the final hearing, his net income had decreased as compared to and anticipated by the court's 1991 order. Second, plaintiff had failed to make a good-faith effort to complete her education and obtain gainful employment. Third, plaintiff's financial circumstances had improved because of Mark Stickney's financial assistance. Based on these and other findings, the court reduced plaintiff's permanent maintenance award to $0. The court did, however, require that defendant continue to pay off the $54,000 in maintenance arrears he still owed plaintiff at a rate of $400 per week. Plaintiff appeals.

We note at the outset that when reviewing the factual findings of a trial court we view them in the light most favorable to the prevailing party below, disregarding the effect of any modifying evidence, and we will not set aside the findings unless they are clearly erroneous. See *Brown v. Whitcomb*, 150 Vt. 106, 109, 550 A.2d 1, 3 (1988); V.R.C.P. 52(a)(2). The findings will stand if there is any reasonable and credible evidence to support them. See *Harlow v. Miller*, 147 Vt. 480, 481-82, 520 A.2d 995, 997 (1986). Review of conclusions of law, however, is nondeferential and plenary. See *State v. Pollander*, 167 Vt. 301, 304, 706 A.2d 1359, 1360 (1997) (questions of law reviewed de novo).

Under 15 V.S.A. § 752(a), a court is authorized to award maintenance, either rehabilitative or permanent, when the recipient spouse lacks sufficient income or property "to provide for his or her reasonable needs" and "is unable to support himself or herself through appropriate employment at the standard of living established during the marriage." Orders of support are not final, and may be modified from time to time as circumstances require. See *vanLoon v. vanLoon*, 132 Vt. 236, 242, 315 A.2d 866, 870 (1974). Section 758 authorizes a modification of a maintenance award "upon a showing of a real, substantial, and unanticipated change of circumstances." 15 V.S.A. § 758.

In this instance, there was evidence to support the court's finding that a real and substantial change of defendant's financial circumstances had taken place since 1991 such that, pursuant to 15 V.S.A. § 758, modification of plaintiff's maintenance award was appropriate. In its 1991 order, the court estimated that defendant's income would rise at a rate of six percent per year. At that time defendant was making approximately $28,000 per month. However, between August 1997 and February 1998, defendant's income varied between $23,615 and $26,225 per month. This is significantly less than the $37,900 he should have been making according to the trial court's projection.

In addition, plaintiff has continued to receive substantial financial assistance from Mark Stickney that was not anticipated in the 1991 order. However, while the court could find that plaintiff had not made a good-faith effort to obtain gainful employment as anticipated, this cannot serve as a basis for modification as the original maintenance award was not contingent on plaintiff's finding employment. Discounting the court's reliance on plaintiff's failure to seek employment, the record still supports the court's finding of a "real, substantial, and unanticipated change of circumstances" to justify a change in maintenance.

A court has broad discretion in determining the amount and duration of a

maintenance award, and we will set it aside only when there is no reasonable basis to support it. See *Chaker v. Chaker*, 155 Vt. 20, 25, 581 A.2d 737, 740 (1990). However, this discretion is not unlimited. See *Klein v. Klein*, 150 Vt. 466, 473, 555 A.2d 382, 386 (1988). Here, we cannot conclude that the reduction of maintenance from $1,800 a week to $0 fell within the court's discretion.

Maintenance awards serve two general purposes. First, they are intended to both correct the vast inequity of income resulting from divorce, see *Russell v. Russell*, 157 Vt. 295, 299, 597 A.2d 798, 800 (1991), and equalize the standard of living of the parties for an appropriate period of time. See *Downs v. Downs*, 159 Vt. 467, 469, 621 A.2d 229, 230 (1993). Second, in a long-term marriage, maintenance awards serve to compensate the homemaker for contributions to family well-being not otherwise recognized in the property distribution. See *Klein*, 150 Vt. at 474, 555 A.2d at 387.

This compensatory aspect of maintenance reflects the reality that when one spouse stays home and raises the children, not only does that spouse lose future earning capacity by not being employed or by being underemployed subject to the needs of the family, but also that he or she increases the future earning capacity of the working spouse, who, while enjoying family life, is free to devote productive time to career enhancement. See *Delozier v. Delozier*, 161 Vt. 377, 382, 640 A.2d 55, 57-58 (1994), citing Krauskopf, *Rehabilitative Alimony: Uses and Abuses of Limited Duration Alimony*, 21 Fam. L.Q. 573, 586 (1988).

The original award of maintenance was clearly intended to compensate plaintiff for her contributions to the family. The change in defendant's finances does not erase plaintiff's entitlement to such compensatory maintenance. Plaintiff and defendant were married for twenty-five years. While defendant was in medical school, plaintiff provided most of the financial support for the parties. In addition, after the birth of their children, plaintiff gave up working outside the home and was their primary caregiver for many years, allowing defendant an opportunity to devote long hours to building a successful medical practice. Plaintiff's original maintenance award was reflective of her efforts and took into account the length of the marriage. The court, in modifying the maintenance award from $1,800 to $0 per week, ignored these factors and, in so doing, abused its discretion.

*Reversed and remanded for proceedings consistent with this decision.*